FILED
2015 Sep-15  PM 01:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **THE STANDARD FIRE INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: 2:14-CV-2102-VEH** |
| **JEFFREY A. KNOWLES, et al.,** | ) ) ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION

This case presents the question of whether attorney's fees claimed pursuant to the Alabama attorney lien statute, or as part of the so-called "common fund" doctrine, trump the claim of a mortgagee, where the funds against which the claim is made are insurance proceeds on mortgaged property, at least part of which were paid because of litigation initiated by the attorneys and their client. Under the circumstances of this case, the court holds that they do not.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

This statutory interpleader action was originally filed on October 30, 2014, by the Standard Fire Insurance Company ("Standard Fire"). (Doc. 1). Concurrent with filing the complaint, Standard Fire, as a disinterested stakeholder, deposited $87,500

into the court's registry. (Doc. 7). On January 13, 2015, Standard Fire was dismissed from this action. (Doc. 36). The only parties remaining in this case are the defendants--Green Tree Servicing, LLC. ("Green Tree"), Jeffrey A. Knowles, William M. Acker, III, Robert J. Hayes, and the United States of America--all of whom claim some stake in the funds.[1]

The case comes before the court on the cross motions for summary judgment filed by Green Tree Servicing, LLC. ("Green Tree") (doc. 45); and Jeffrey A. Knowles, William M. Acker, III, and Robert J. Hayes (doc. 47). Each movant (or, in the case of Knowles, Acker, and Hayes, "movants") has responded to the other's motion for summary judgment.  The United States has neither filed a motion for summary judgment, nor responded to either of the pending motions.  For the reasons stated herein, Green Tree's motion will be **GRANTED,** as to all claims and parties, including the United States, and the motion of Knowles, Acker, and Hayes will be **DENIED**.

## II.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there

---

[1] The original named defendants (sometimes referred to by the court and the parties as "claimants") were Jeffrey A. Knowles, Green Tree Servicing, LLC, the City of Vestavia Hills, Alabama, and the United States of America. On December 29, 2015, William M. Acker, III and Robert J. Hayes were allowed to intervene as defendants and/or claimants. (Doc. 31). On February 26, 2015, all claims of the City of Vestavia Hills were dismissed with prejudice. (Doc. 42 at 7).

is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the

4

non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *S. Pilot Ins. Co. v. CECS, Inc.*, No. 1:11 CV 3863 AT, 2014 WL 4977805, at *2 (N.D. Ga. Sept. 12, 2014) (citing *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1331 (11th Cir.2005)). "The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* "The Eleventh

Circuit has explained that '[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *Id. (quoting United States v. Oakley,* 744 F.2d 1553, 1555 (11th Cir.1984)). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* (quoting *Oakley*, 744 F2d at 1555–56).

## III.   FACTS

The following facts have been offered by Green Tree in its motion for summary judgment and, because they have not been disputed by the parties opposing that motion, are deemed to be admitted for summary judgment purposes:[2]

1.     On May 22, 2007, claimant Jeffrey A. Knowles ("Knowles") and his wife mortgaged (the "Mortgage") certain real property located in

---

[2]The court's Uniform Initial Order provides that

The first section [of the opposition brief] must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. 9 at 17) (italics in original).

Birmingham, Alabama (City of Vestavia Hills). The Mortgage secured a note (the "Note") between . . . Knowles and GMAC Mortgage in the amount of $153,500.00. Together, the Mortgage and Note are referred to as the "Loan."

2.      As part of the Loan, Knowles agreed that he would maintain homeowner's insurance on the real property and have the mortgagee named in a "standard mortgage clause."

3.      From October 27, 2010 to October 27, 2011, Knowles insured the property through a policy of insurance with Standard Fire Insurance Company ("Standard Fire") (the "Policy"). The Policy includes several coverages including coverage for the home or dwelling (Coverage A) and for other structures (Coverage B). The Policy also lists "GMAC Mortgage LLC ISAOA" as the first mortgagee on the property in accordance with the Mortgage terms. The term "ISAOA", in the insurance industry, stands for "Its Successors And/Or Assigns."

4.      The Policy contained a Mortgage Clause which governs the payment of insured losses under Coverages A & B when a mortgagee is named in the Policy:

> "If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear."

(Doc. 1-1 at 36 (Section I-Conditions, ¶ 12)). The Policy further stated that a denial of the claim with respect to the insured will not affect the mortgagee's claim if certain conditions are met by the mortgagee:

> "If we deny your claim, that denial shall not apply to a valid claim by the mortgagee….."

(Id.)

5.      On April 27, 2011, during the Policy Period, the dwelling and other structures at the subject property were damaged in the tornadoes

7

that struck Alabama.

6.     Knowles made a claim for the subject loss against the Standard Fire insurance policy.

7.     As to the structure damage, Standard Fire adjusted the loss and issued a check on May 16, 2011 for $22,679.05. Knowles chose not to deposit the check from Standard Fire.

8.     After contest from Knowles, Standard Fire re-adjusted the loss and issued check of $61,392.84 on September 11, 2012[,] and a supplemental check of $2,034.89 on October 1, 2012. Knowles again chose not to deposit the check from Standard Fire. As such, as of October 1, 2012, Standard Fire had offered a total of $63,427.73 as payment on the physical structure claim, with such payment being offered without any lawsuit having been filed by Knowles and without the assistance of any legal counsel.

9.     On September 20, 2012, Knowles retained legal counsel. As of the date of hiring counsel (which was unknown to Standard Fire), Standard Fire had already offered, through its September 11, 2012 check, payment of $61,392.84 on the claim.

10.     Approximately, seven months later, on April 25, 2013, Knowles, through legal counsel, filed suit against Standard Fire for breach of contract and bad faith[.]

11.     On September 30, 2014, Knowles and Standard Fire settled the lawsuit. Under the settlement, Knowles accepted $87,500 for the damage to the real property, an increase of $24,072.27 from what Standard Fire had paid out (but which Knowles had refused to accept) the year before.

12.     Because Standard Fire had offered to pay $63,427.73 in September/October 2011[,] on the claim before the involvement of any attorneys and before the filing of any lawsuit, Knowles'[s] hiring of legal counsel and the filing of the lawsuit brought a monetary benefit of

only $24,072.27.

13.    This interpleader was filed shortly thereafter, with the following possible claims to the proceeds:

> (a) Hayes and Acker: Legal counsel for Knowles; hired in September 2012; claims an attorneys' fee lien of $31,925.65 [on] the entire $87,500. Hayes and Acker seek these proceeds even though their efforts resulted in only a $24,072.27 increase from Standard Fire above what had already been offered.
>
> (b) Knowles: Insured and loss payee on the Standard Fire insurance policy. Still owes in excess of $140,000 on the Loan.
>
> (c) Green Tree Servicing LLC: Current mortgage holder on the subject real property by virtue of its status as the assignee. At all times pertinent to the disputes at issue in the case, the amount owed by Knowles on the mortgage has exceeded $140,000, with no payment having been made by Knowles since May 2013.
>
> (d) IRS: Federal tax lien of $74,441, recorded on April 21, 2011.

(Doc. 46 at 2-6) (citations omitted by court except as to direct quotations).

In addition, the following facts, set out by Knowles, Marsh, and Hayes in their motion for summary judgment, have also not been disputed by Green Tree, and are also deemed to be admitted for summary judgment purposes:[3]

---

[3] Of course, it is within the court's prerogative to strike these facts in their entirety. The court's Uniform Initial Order requires:

> The moving party shall list in *separately numbered paragraphs* each material fact the movant contends is true and not in genuine dispute, and upon which the moving party relies to demonstrate that it is entitled to summary judgment. Each such statement must be followed by a specific reference to those portions of the evidentiary record that the movant claims supports it.

Because Green Tree was a loss-payee, Knowles invited it to participate [in the] two mediations of his dispute with Standard Fire, but Green Tree elected not to participate. (Doc. 48 at 2) (citations omitted by court).

At the time of the settlement [between Knowles and Standard], Green Tree and the Internal Revenue Service had liens against Knowles'[s] property. (Doc. 48 at 2) (citations omitted by court).

Knowles retained Robert Hayes to represent him with respect to his claim against Standard Fire. Knowles agreed to pay Hayes a $5,000 retainer plus 20% of any recovery Hayes obtained from Standard Fire. Hayes filed suit in state court on Knowles' behalf. Standard Fire removed the case to the District Court for the Northern District of Alabama. Acker entered an appearance and continued to prosecute the case. Knowles was unable to pay the $5,000 retainer and renegotiated the attorney fee agreement to a flat 35% contingency, net expenses. (Doc. 48 at 2) (citations omitted by court).

Knowles, Acker[,] and Hayes claim against the interpleaded funds an attorney fee in the amount of $30,169.77 and $1,300.65 in expenses pursuant to the Alabama Attorney Lien statute and the "common fund" doctrine. (Doc. 48 at 2) (citations omitted by court).

Finally, the following facts, set out by Knowles, Marsh, and Hayes in their opposition to Green Tree's motion for summary judgment, have also not been disputed by Green Tree, and are also deemed to be admitted for summary judgment

---

(Doc. 9 at 16-17) (italics in original). That same order also provides: **"The court reserves the right sua sponte to STRIKE any statements of fact or responsive statements that fail to comply with these requirements."** (Doc. 9 at 19) (bold in original). Instead of following the court's directive, these movants merely write their facts in paragraph form. Most sentences therein do not contain a citation to the record. However, in light of the fact that Green Tree has also ignored this court's order in that it has failed to respond to all of the facts set out by these movants, the court will not strike them.  Additionally, the court has omitted facts which repeat those originally set out by Green Tree.

purposes:

> Since as early as July 23, 2012, the original mortgagee, GMAC, and by virtue of its assignment of the Knowles mortgage to Green Tree, Green Tree, have long known that it was likely that the insurance proceeds from Standard Fire would be insufficient to satisfy Knowles' debt on the note, that Knowles maintained that the insurance proceeds would not cover repair costs, that the mortgagee's collateral was under threat of condemnation and that Knowles was represented by counsel. Despite this knowledge, neither GMAC nor Green Tree advised Knowles or his counsel that it claimed the sole right pursuant to a loss-payee clause to any settlement funds if those funds were less than the amount owing on the mortgage. Neither mortgagee took the position that only it had standing to sue Standard Fire or control any litigation regarding the insurance proceeds. On June 30, 2014[,] and September 30, 2014, counsel for Knowles notified counsel for Green Tree that they were attempting to settle a bad faith/breach of contract case . . . and invited it to participate in settlement negotiations. Green Tree did not respond to the requests or assert any contractual right under the loss payee clause of the mortgage to control the litigation or receive any settlement proceeds to the extent they were less than Knowles' debt.

(Doc. 52 at 2-3) (citations omitted by court).

## IV.   ANALYSIS

### A.   <u>Green Tree Has a Contractual Interest in the Insurance Proceeds</u>

Green Tree bases its claim on the following language in the mortgagee clause: "If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you [Knowles], as interests appear." (Doc. 1-1 at 36). The clause goes on to state that, if certain conditions are met, a denial of a claim with respect to the insured will not affect the mortgagee. (Doc. 1-1 at 36). This policy

language is commonly known as a "union", "standard," or "New York" mortgage clause. *See Smith v. Aetna Ins. Co.*, 410 So. 2d 11, 12 (Ala. 1981) ("New York Standard Mortgage Loss Payable clause"); *Norwest Mortgage v. Nationwide Mut. Fire Ins. Co.*, 718 So. 2d 15, 17 (Ala. 1998) ( "union" or "standard" mortgage clause). "[U]nder Alabama law, [such a clause] constitutes a separate contract between a mortgagee and an insurer." *Norwest Mortgage, Inc.*, 718 So. 2d at 17. Said another way, the clause "operates to create a separate and independent insurance of the mortgagee's interest in the property." *Smith*, 410 So. 2d at 12 (internal citations and quotation marks omitted). As to between the mortgagor/insured and the mortgagee, "[t]he mortgagee has the first right to the insurance proceeds to the extent of the amount owing it by the insured, not exceeding the total liability of the insurer under the policy; and the insured is entitled to the balance of the amount of such liability." *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams*, 530 So. 2d 1371, 1374 (Ala. 1988). These principles are not in dispute, and they are critical to the resolution of the attorney fee claim.[4]

---

[4] Knowles, Acker, and Hayes assert that these rights have been waived. This argument is addressed in a separate section of this opinion.

B.    **The Attorney Fee Claim**

Acker and Hayes claim[5] that they have an attorney lien under Ala. Code §
34-3-61 which is entitled to priority and/or a right to the fee under the so-called
"common fund" doctrine. The court will begin with an analysis of the claim under the
common fund doctrine.

1.    ***The Common Fund Doctrine***

a.    **General Background**

In *Henley & Clarke v. Blue Cross-Blue Shield of Alabama*, 434 So. 2d 274
(Ala. Civ. App. 1983), the Alabama Court of Civil appeals explained:

> Generally, the "common fund" doctrine is an equitable principle
> designed to compensate an attorney whose services on behalf of his
> client operated to create, discover, increase, preserve, or protect a fund
> to which others may also have a claim. 7A C.J.S., Attorney & Client §
> 334.
>
> The "common fund" doctrine has traditionally been applied to
> certain well defined, limited areas; most commonly, in cases for the
> protection of trusts, for the protection of a decedent's estate, actions
> where one creditor acted to the benefit of other creditors, and actions by
> stockholders for corporate waste and the recovery of corporate property.
> The doctrine has also been applied in insurance subrogation cases. *See*
> 49 A.L.R. 1149; 107 A.L.R. 749; 2 A.L.R.3d 1441; 20 Am.Jur.2d, Costs
> § 85.2

---

[5]  The motion seeking fees is actually that of Knowles (the client), and Acker and Hayes
(the attorneys).  While Knowles <u>may</u> have an interest in the fee being awarded, since it is actually
only Acker and Hayes who would be awarded any fee, from this point forward in this opinion the
court will refer to only Acker and Hayes in reference to the fee arguments.

> As a general rule, the application of the "common fund" doctrine depends upon at least two requirements. There must be a "fund" from which to compensate the attorney, and the attorney's services must benefit that fund. 7A C.J.S., Attorney & Client § 334(b). In addition, the benefit rendered must be a direct benefit, either to the fund or the party to be charged with the fee. *Lewis v. Railroad Retirement Board*, 256 Ala. 430, 54 So.2d 777 (1951), *cert. denied*, 343 U.S. 919, 72 S.Ct. 677, 96 L.Ed. 1333 (1952).

*Henley & Clarke*, 434 So. 2d at 276.  Four years after *Henley & Clarke*, in *Day v. Ramada Inn S.*, 527 So. 2d 130, 132 (Ala. Civ. App. 1987), the Court of Civil Appeals stated:

> There are five main requirements of the common fund doctrine. First, there must be a fund from which to pay the attorney, and this fund must be one which the attorney's services [benefitted]. Second, the benefit rendered must be direct rather than incidental. Third, the party seeking fees and the party to be charged must have a common interest in the fund. Fourth, the proceedings must be equitable in nature. Fifth, the fund must be within the control of the court.

*Day*, 527 So. 2d at 132 (citing *Henley & Clarke*). Very recently, the Alabama Court of Civil Appeals reaffirmed these same five elements in *State Farm Mut. Auto. Ins. Co. v. Pritchard*, No. 2130989, 2015 WL 3648174, at *2 (Ala. Civ. App. June 12, 2015) ("Generally, in order to be entitled to a common-fund payment, a plaintiff must prove five elements: '(1) there must be a 'fund' from which to compensate the attorney; (2) the attorney's services must directly benefit the fund; (3) the party seeking the fee and the party to be charged with the fee must have a common interest in the fund; (4) the proceedings must be equitable in nature, and (5) the fund must be

within the control of the court.'") (*quoting Government Emps. Ins. Co. v. Capulli*, 859

So.2d 1115, 1122 (Ala.Civ.App.2002)).

### b.    Applied to the Instant Case

In their initial memorandum in support of their motion for summary judgment,

Acker and Hayes cite several cases and set out block quotes on the law of the

common fund doctrine. (Doc. 48 at 5-7). However, they make no attempt to explain

how any of the elements of that doctrine are satisfied in this case. They state only that

they "are entitled to attorneys fees and expenses from the interpleaded funds pursuant

to the 'common fund' doctrine with priority over any claims to the settlement

proceeds by Green Tree or the federal government."[6] (Doc. 48 at 7-8). Even in their

reply brief to their motion for summary judgment, and in their response brief to

Green Tree's motion for summary judgment, they do not address how the substantive

elements of the common fund doctrine apply to this case. (Docs. 54, 52).

Instead, Acker and Hayes essentially argue that one case, *First Nat. Bank of

Hamilton v. Estes*, 479 So. 2d 1275 (Ala. Civ. App. 1985), provides all the support

they need.[7] In *Estes*, the plaintiffs, Leonard and Lou Estes, owned a truck which was

---

[6] As noted previously, the United States has not responded to the pending motions for summary judgment, and it has not filed its own motion.

[7] That is not to say that they perform any actual <u>analysis</u> of *Estes* in any of their submissions. Instead, they merely, in a conclusory manner, cite to broad principles from the case.

destroyed by fire. The truck was insured by St. Paul Fire and Marine Insurance Company ("St. Paul"). In order to buy the truck, the Esteses had borrowed funds from First National Bank of Hamilton ("First National"). Leonard Estes had executed a promissory note in connection with that loan. After the fire, the Esteses made a claim with St. Paul, which St. Paul refused to pay. Thereafter, the Esteses sued St. Paul for the proceeds.

About the same time that they filed suit, the Esteses defaulted on the payments to First National. First National filed a motion to intervene in the suit against St. Paul, which was granted, and then filed a complaint in intervention. The complaint in intervention alleged that Leonard Estes had defaulted on the promissory note and that First National was due from him the principal and interest on the note, plus interest and attorney's fees. First National later amended its complaint in intervention to also allege that St. Paul owed it the reasonable cash value of the truck at the time it was destroyed.

After a jury trial, the jury returned a verdict in favor of the Esteses and against St. Paul for $26,541.71. It also returned a verdict in favor of First National and against Leonard Estes for $32,155.17. St. Paul then paid an "agreed-upon sum" to the Circuit Clerk of Marion County, Alabama.[8] The trial court granted plaintiff's

---

[8] The opinion does not state what that "agreed-upon sum" was.

counsel's claim for attorney fees for one-third of the amount paid by the insurance company to the circuit clerk.[9] First National's motion to set aside the award was denied, and it appealed.

In determining that the fee <u>should</u> be allowed, the Court of Civil Appeals wrote:

> This court said in the case of *First Federal Savings and Loan Association v. Haley*, 377 So.2d 1082 (Ala.Civ.App.1979), that it was the rule that "the liability of the insurer becomes fixed as of the date of the loss and if the mortgage debt covered or exceeded the whole loss, the right of action on the policy was in the mortgagee." *Girard Fire & Marine Insurance Co. v. Gunn*, 221 Ala. 654, 130 So. 180 (1930). The record indicates that the mortgage indebtedness exceeded the loss in this case. However, the fact that the right of action against the insurer in this case may have been in First National is of no avail at this stage of the case. Verdict and judgment have already been entered in favor of the Esteses without objection or appeal. There is evidence to indicate that First National not only acquiesced in the Esteses' bringing the suit, it urged them to do so in their own name. Though intervening shortly before trial by filing a complaint against the Esteses upon its note, with further claim to the proceeds of the insurance policy, First National never sought to enforce a primary right as a party plaintiff. Neither has it sought to attack the judgment in favor of the Esteses. First National seeks the benefits of the Esteses' suit without contributing to the cost of its prosecution.
>
> We consider that counsel for the Esteses is entitled to recover from the proceeds of the judgment recovered under § 34-3-61(b), Code

---

[9] Again, the opinion did not specify what the "agreed-upon sum" was, and it is unclear, whatever it was, whether it was made up of the amount awarded solely to Estes and against St. Paul, or the amount awarded to First National and against Estes, or some combination thereof.

of Alabama 1975,[10] or under the "common fund" doctrine. The "common fund" doctrine is an equitable principle of unjust enrichment. It "embraces a situation where a litigant has proceeded alone to create, protect or preserve a fund in which others are entitled to share." *Troy Bank and Trust Co. v. Brantley*, 263 Ala. 428, 82 So.2d 618 (1955); *Blue Cross and Blue Shield of Alabama v. Freeman*, 447 So.2d 757 (Ala.Civ.App.1983); *Williams v. Williams*, 424 So.2d 638 (Ala.Civ.App.1982).

We applied the doctrine in *Blue Cross, supra*, in a case where an insured proceeded alone to collect a claim against a tort-feasor. Blue Cross, as subrogee under its policy of insurance, sought to intervene near trial time and recover from funds derived from the insured's suit. This court held that mere intervention by Blue Cross, in order to claim from the insured's recovery in his action against the tort-feasor, was not enough to avoid paying its share of attorney fees incurred by the insured. The principle of equity applied in that case appears equally applicable in this case. We therefore affirm the judgment below.

*Estes*, 479 So. 2d at 1276-77.

At first glace, *Estes* may appear to be on point. In order to understand why it is not, it is necessary to first go back and review the *Henley & Clarke* and *Day* decisions, and the more recent Alabama Supreme Court decision in *Mitchell v. Huntsville Hosp.*, 598 So. 2d 1358 (Ala. 1992).

In both *Henley & Clarke* and in *Day*, the Alabama Court of Civil Appeals refused to award attorney fees under the common fund doctrine. In *Henley & Clarke*, an attorney had been successful in having his client's Medicare disability benefits

---

[10] Ala. Code § 34-3-61 creates an attorney's lien in certain cases. Whether such a lien was created in the instant case is discussed in the next section of this court's opinion.

reinstated, which ultimately benefitted his client's insurer such that it was reimbursed by Medicare for hospital bills the insurer had paid. The Court of Civil Appeals denied the attorney a fee award from the insurer, on the common fund theory, because the benefit that was conferred upon the insurer was incidental to attorney's services to his client, and there was no "common" fund in which both client and insurer had an interest. It wrote:

> The services that [benefitted] Blue Cross consisted of the efforts to obtain the refund from Medicare. This undoubtedly [benefitted] Blue Cross. However, in appellant's own words, these efforts were undertaken "to establish the client's entitlement to new Medicare coverage and to recoup hospitalization payments for the insurer in order to protect the future major medical benefits of the client." In other words, Henley apparently sought to obtain the refund to prevent exhausting his client's coverage under his private policy with Blue Cross and the trial court could have so found. The Supreme Court of Alabama has held that "the right to charge a fund with costs and expenses depends upon whether the costs and expenses were incurred in the promotion of the interest of those eventually found to be entitled to the fund." *Lewis v. Railroad Retirement Board, supra*, 256 Ala. at 435, 54 So.2d at 781. The fact that "representation incidentally resulted in a benefit" to others does not authorize charging them with attorney's fees. *Lewis v. Wilkinson*, 237 Ala. 197, 186 So. 150 (1939).

> Additionally, there is the requirement that there must be a "common" interest in the fund. That is, the party seeking the fees and the party to be charged must both have some interest in the fund. *Strong v. Taylor*, 82 Ala. 213, 2 So. 760 (1887). A good example is where an insurance company is subrogated to the rights of the insured in collecting from a third person for damages or loss to property the subject of an insurance contract. *See* 2 A.L.R.3d 1441. The insurance company pays the insured for the loss and then the insured collects from the tort-feasor an amount greater than the insurance payoff. The insurance

company has subrogation rights to that portion of the amount collected from the tort-feasor covered by the insurance contract. The insurance company and the insured have a "common" interest in the fund.

In the present case, the money refunded belonged entirely to Blue Cross. Blue Cross did not acquire it through subrogation to the insured's rights in the money. Henley's client had no interest in the money. The primary benefit sought by Henley's client was the protection of future coverage under the Blue Cross policy. The refund of the money was necessary to accomplish that goal, and there is no denying that Blue Cross [benefitted] substantially. However, Henley's client has no "interest" in the money itself. In fact, Henley was informed by Medicare that Mr. Lancaster could not file for the refund, that either Blue Cross or the hospital was the proper party to file. This is an indication that Mr. Lancaster had no interest in the fund.

*Henley & Clarke*, 434 So. 2d at 276-77. Then the Court of Appeals added:

Furthermore, it appears the trial court could well have found that no attorney's fees were allowed under the "common fund" theory since two other requirements were not met. First, the proceedings in the instant case were not apparently proceedings in equity, a prerequisite for recovery under the "common fund" theory. *Shelby County Commission v. Smith*, 372 So.2d 1092 (Ala.1979); *Lewis v. Railroad Retirement Board, supra*. Second, the fund or property at issue was never brought within the control of the court, another requirement for recovery under the "common fund" theory. *Lewis v. Railroad Retirement Board, supra*; *Strang v. Taylor, supra.*

*Id.*

In *Day*, the plaintiff sought treatment for her on-the-job injuries, but mistakenly gave her providers her husband's insurance information, rather than her worker's compensation information. As a result, The Travelers Companies ("Travelers"), her husband's carrier, instead of the workmen's compensation insurer, Aetna Insurance

20

Company ("Aetna"), mistakenly paid the claims. The plaintiff had been employed by Ramada Inn South ("Ramada"). She employed Attorney Henley[11] "to obtain payment of unpaid medical expenses from Ramada and Aetna, as well as to assist in securing social security benefits." *Day*, 527 So. 2d at 131.

> Henley notified Travelers of the existence of compensation coverage by Aetna in 1984. In March 1985 Henley filed a petition on behalf of Day for payment of her medical expenses from Aetna. Henley sought to have Aetna pay the money into court rather than make payment to the health care providers directly. However, the court ordered the health care providers to send their claims against Day to the attorney for Aetna and also ordered Henley to submit claims for payment of medical expenses previously paid by Day to the attorney for Aetna. Aetna paid the claims of the health care providers and Day. In December 1985 Henley filed a petition for an attorney fee lien declaratory judgment. All but one of the health care providers deny that Henley has ever represented them or their interests and deny his right to an attorney fee out of payments made to or owed by them. Travelers has agreed to pay an attorney fee and has been dismissed from this appeal. Aetna paid the health care providers in full and the health care providers reimbursed Travelers for its payments on behalf of Day. Subsequently, the court dismissed the action and Henley's motion for an attorney fee.

*Id.* The Court of Civil Appeals then refused to find the common fund theory applicable, writing:

> The record does not reveal any judgment or settlement which would create such a [common] fund. Aetna did submit a large payment to Henley, who gave it to the court clerk to disburse. The court clerk, however, did not retain or cash this check but, rather, returned it to the

---

[11] It is unknown whether this is the same Henley who was the attorney in *Henley & Clarke*.

employer's attorney for disbursement. The court had not ordered that the moneys be paid to the court clerk. The disbursements were made to the various medical care providers directly by Aetna. Thus, there was no fund created by or under the control of the court from which disbursement would or could be made by the court. All the record reveals is that the health care providers were directed to submit their claims to Aetna for payment. This was done, and the purpose for Day's action was satisfied.

Even if we ignored the above and gave a liberal interpretation to the existence of a common fund, Henley is unable to overcome the second requirement, i.e. that the benefit conferred on the medical providers and Travelers be direct and not incidental. Henley's actions were for the benefit of his client in helping her to obtain payment of her medical and surgical expenses. The benefits derived therefrom by the medical care providers are only incidental to the purpose of Henley's representation of Day.

The facts of this case are similar to those in *Henley* [*& Clarke*], *supra*, in that in *Henley* [*& Clarke*] payments made by the personal insurance company were later refunded by medicare once the attorney had secured medicare benefits for his client. Judge Holmes, writing for the majority of this court, opined that this benefit was only incidental to the initial purpose of the representation, *i.e.* securing medicare coverage. *Henley, supra.*

We view the instant case in much the same fashion. The benefit conferred on the medical providers was only incidental to the client's desire to see that her medical expenses were paid. Thus, Henley and Day do not meet the second requirement.

It appears that Day was mainly interested in getting her medical bills paid rather than obtaining the money itself. Both the party seeking the fees and the party charged must have an interest in the fund. *Henley* [*& Clarke*], *supra, citing Strang v. Taylor*, 82 Ala. 213, 2 So. 760 (1887). Thus, Henley and Day are unable to meet the third requirement of a common fund.

22

> It is clear from the record that Henley does not meet four of the requirements necessary under the common fund theory. Thus, we do not find it necessary to make a determination of whether this case was an equitable proceeding or not.

*Id.* at 132-33.

Having reviewed the *Henley & Clarke* and *Day* opinions, this court now turns to the Alabama Supreme Court discussion of the *Estes* opinion in *Mitchell v. Huntsville Hosp.*, 598 So. 2d 1358 (Ala. 1992). In *Mitchell*, Mitchell was the attorney for Johanna Pierce, a minor, and Elizabeth Pierce Jeffreys, Pierce's mother. Mitchell's employment contract called for a one-third contingency fee. Pierce sustained injuries in an automobile accident and was treated for those injuries at Huntsville Hospital incurring charges in the amount of $56,878.42. Pursuant to state law, the hospital filed and perfected a hospital lien for this amount in the Lawrence County Probate Court.

Mitchell filed a tort action on behalf of Pierce and Jeffreys against the driver of the other vehicle involved in the accident with Pierce. That action was ultimately settled, but no final judgment was entered and the proceeds were not distributed. Since the hospital bill was never paid, it was sent to the hospital's collection attorneys, Smith & Waldrop, who began attempts to collect on the bill.

Eventually Mitchell began representing Pierce and Jeffreys in their dealings with Smith & Waldrop. Claiming a right under the "common fund" doctrine and/or

pursuant to the attorney's lien statute, Mitchell wrote Smith & Waldrop and told them

that he would be claiming a one-third attorney fee out of any money collected as a

result of his efforts regarding the account. Mitchell then discovered insurance that

covered Pierce under a Connecticut General Life Insurance Company policy. He

communicated with Connecticut General on several occasions, and eventually that

company agreed to pay the claim. Mitchell informed the hospital of this development,

which then sent Connecticut General copies of Pierce's hospital bills. During his

correspondence and conversations with Connecticut General, Mitchell requested that

Connecticut General either: 1) deduct his 1/3 fee from the proceeds and send that to

him and the remainder to the hospital, or 2) send the entire amount of the proceeds

to him so that he could deduct his fee and send the remainder of the proceeds to the

hospital. The *Mitchell* court noted:

> Connecticut General responded by saying that if there was an
> assignment-of-benefits form it would pay the provider, but that, if there
> was no such form, it would pay the insured directly. There was no
> assignment-of-benefits form executed; however, according to the
> stipulation of facts, the language of the policy was inconsistent with
> Connecticut General's response to Mitchell's request. The parties
> stipulated that the policy prohibited payment directly to a minor, but
> provided that payment would be made to the minor's legal guardian
> upon request.

*Mitchell*, 598 So. 2d at 1359.

When several months passed, and Connecticut General had not yet paid

24

Pierce's hospital bill, Mitchell filed suit against Connecticut General, alleging breach of contract and bad faith failure to pay a claim. Then, before being served with that lawsuit, Connecticut General sent the hospital payment for all but $1,269.02 of the balance due on Pierce's account. Smith & Waldrop received 32.66% of the proceeds from Connecticut General, as part of their contract with the hospital for collection services. Mitchell wrote Smith & Waldrop, claiming a one-third fee from the proceeds of the check that Connecticut General had sent the hospital. Smith & Waldrop refused to pay Mitchell the fee that he was claiming. Mitchell then filed suit against the hospital for the recovery of his fee based on the "common fund" theory and/or a purported attorney fee lien. Mitchell later sent the hospital a check for $1,269.02, the remaining balance due on Pierce's account, which contained conditional language requiring that the hospital lien be immediately satisfied. Smith & Waldrop refused to cash the check and returned it to Mitchell.

Mitchell argued to the Alabama Supreme Court that he was entitled to a one-third attorney fee for the work he performed, which resulted in the hospital's being paid by Connecticut General, based on the "common fund" theory of recovery, and the attorney's lien statute. In determining that he was not, the Alabama Supreme Court wrote:

> The parties and the trial court, and this Court on its original consideration of this appeal, focused on the cases of *Day v. Ramada Inn*

*South*, 527 So.2d 130, 132 (Ala.Civ.App.1987); and *Henley & Clarke v. Blue Cross-Blue Shield of Alabama*, 434 So.2d 274, 276 (Ala.Civ.App.1983), which are factually similar to this case. The Court of Civil Appeals in those cases addressed arguments that fees should be allowed on the theory that the attorney's efforts had created a "common fund."

The "common fund" exception is merely a particular instance of the "special equity" exception to the rule that attorney fees may not ordinarily be recovered. *See, e.g., Eagerton v. Williams, supra; Reynolds v. First Alabama Bank, supra.* Another statement of the exception was given in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and quoted in *Brown v. State*, 565 So.2d 585, 593 (Ala.1990): "A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself." Mitchell did not seek recovery from Connecticut General on behalf of a group that included his clients and the Hospital; he acted simply on behalf of his clients. As the trial court observed, Mitchell and his clients were in an adversarial relationship with the Hospital. A similar point was made in *Lewis v. Railroad Retirement Board*, 256 Ala. 430, 54 So.2d 777 (1951), *cert. denied*, 343 U.S. 919, 72 S.Ct. 677, 96 L.Ed. 1333 (1952). Lewis, an injured railroad employee, obtained benefits from the Railroad Retirement Board. Lewis's attorneys later recovered a judgment against the employer railroad. The railroad interpleaded a portion of that judgment into court because the Board claimed a right to reimbursement, and Lewis's attorneys attempted to recover a fee from that portion. In affirming the denial of such a fee, the Court discussed several cases regarding the exception that allows fees paid to an attorney who renders services for the common benefit of a group. 256 Ala. at 435, 54 So.2d at 781-82. Referring to Lewis as the complainant and to his attorneys as intervenors, the Court said:

> "The services rendered by the attorneys in the suit in which the judgment against the railroad company was procured were services rendered in behalf of a client, the complainant in the cause, and his individual interest under a contract made only between complainant and intervenors.

> It was not a service rendered in behalf of the Railroad Retirement Board, although it resulted incidentally in benefit to the Railroad Retirement Board. As a result of the views which we have here expressed, the allowance of a fee cannot be sustained on a theory of services rendered for the common benefit of all the parties."

256 Ala. at 436, 54 So.2d at 782.

Mitchell cites *First National Bank of Hamilton v. Estes*, 479 So.2d 1275 (Ala.Civ.App.1985), in support of his argument. . . . [In *Estes* the] Court of Civil Appeals affirmed the holding that Estes's attorney was entitled to recover his fee from the insurance proceeds. This result is sustainable, from the face of the opinion, simply on the basis that the only judgment against St. Paul was in favor of Estes. In collecting that judgment, Estes's attorney was entitled to deduct his fee. That deduction should not affect the Bank's $32,155.17 judgment against Estes. Similarly, if Johanna and Mrs. Jeffreys had obtained a judgment against Connecticut General, Mitchell could have collected his fee from that judgment, but their liability to the Hospital would not have been affected. We agree with Mitchell that the reference by the Court of Civil Appeals in *Estes* to the "common fund" theory is somewhat inconsistent with its treatment of that theory in *Day* and in *Henley & Clarke*. The reference in *Estes* to the "common fund" exception appears both misplaced and unnecessary.

In conclusion, we hold that the general rule applies rather than the "special equity" exception, and that there is no basis for awarding Mitchell an attorney fee that the Hospital must pay out of the insurance proceeds it received from Connecticut General.

Mitchell's argument that he was entitled to an attorney's lien is without merit under the circumstances. For the same reasons stated above as to why the trial court did not err in declining to award a fee to Mitchell that was collectable from the Hospital out of the Connecticut General insurance benefits, the court did not err in declining to declare a lien against those benefits in these circumstances. *See* § 34-3-61(b), Ala.Code 1975.

27

*Id.*, at 1361-62.

Acker and Hayes argue that *Mitchell* upholds *Estes,* citing the following language from *Mitchell*:

> [In *Estes* the] Court of Civil Appeals affirmed the holding that Estes's attorney was entitled to recover his fee from the insurance proceeds. This result is sustainable, from the face of the opinion, simply on the basis that the only judgment against St. Paul was in favor of Estes. In collecting that judgment, Estes's attorney was entitled to deduct his fee.

(Doc. 54 at 2) (citing *Mitchell*, 598 So. 2d at 1362). The portion of the quote left out by Acker and Hayes reads:

> That deduction should not affect the Bank's $32,155.17 judgment against Estes. Similarly, if Johanna and Mrs. Jeffreys had obtained a judgment against Connecticut General, Mitchell could have collected his fee from that judgment, but their liability to the Hospital would not have been affected. <u>We agree with Mitchell that the reference by the Court of Civil Appeals in *Estes* to the "common fund" theory is somewhat inconsistent with its treatment of that theory in *Day* and in *Henley & Clarke*. The reference in *Estes* to the "common fund" exception appears both misplaced and unnecessary.</u>

*Mitchell*, 598 So. 2d at 1362 (emphasis added). These statements by the Alabama Supreme Court support the proposition that an attorney fee may be proper under the common fund doctrine, <u>as to a portion of a fund to which the attorney's client had some entitlement</u>. However, in *Mitchell*, the court was clear that the discussion of the common fund doctrine in *Estes* was "misplaced," "unnecessary," and "inconsistent with its treatment of that theory in *Day* and in *Henley & Clarke*." *Mitchell*, 598 So.

28

2d at 1362. Acker and Hayes cannot rely on *Estes* alone to support their claim.

As noted, Acker and Hayes have otherwise ignored the elements necessary to make a showing under the common fund doctrine, and "'[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments.'" *McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007) (*quoting Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). Accordingly, the court finds that Acker and Hayes have failed to carry their burden of showing that they are entitled to an attorney's fee under the common fund doctrine.

Further, on independent examination, this case does not fit into one of those "certain well defined, limited [cases]," *Henley & Clarke*, 434 So. 2d at 276, in which the doctrine has been applied, such as the protection of trusts, the protection of a decedent's estate, actions where one creditor acted to the benefit of other creditors, actions by stockholders for corporate waste and the recovery of corporate property, or insurance subrogation cases. *Id.* In addition, this court finds that, as in *Mitchell*, Green Tree only incidentally benefitted from Knowles' litigation against Standard.

Acker and Hayes have made no showing otherwise.[12]

### c.     No Showing of Priority Has Been Made

Even assuming Acker and Hayes had made a showing that they were entitled

to a fee under the common fund doctrine, in none of their filings do they explain why

---

[12] This conclusion is consistent with recent Alabama appellate court opinions which discuss the doctrine in the context of a debtor-creditor relationship. *See, e.g. Gov't Employees Ins. Co. v. Capulli*, 859 So. 2d 1115, 1121 (Ala. Civ. App. 2002) (stating that "[t]he common-fund doctrine has no application when the relationship between the attorney's client and the party sought to be charged with the attorney fee is one of debtor and creditor," and noting that *Mitchell* implicitly recognized that principle); *Ex parte State Farm Mut. Auto. Ins. Co.*, 118 So. 3d 699, 707 (Ala. 2012) quoting *Capulli* and noting that what removed the cases from the operation of the common-fund doctrine was the existence of a debtor-creditor relationship). As the Alabama Court of Civil Appeals has noted, in "*Day*, and *Henley & Clarke*, each beneficiary was a creditor, not a subrogee, of the client, and, unlike a subrogated insurer, the creditor's right to payment of its claim was not contingent on the client-debtor's recovery of a 'fund' from which the creditor could receive payment." *Capulli*, 859 So. 2d at 1121. Acker and Hayes do not explain why, since Knowles' relationship to Green Tree is also a debtor-creditor relationship, these cases do not prevent a fee from attaching. Instead, in one short sentence, they merely argue that this court should ignore these cases because they "relate to the special body of law in insurance subrogation cases." (Doc. 54 at 2). It is ironic that they would make such an argument when the very case on which they place so much weight, *Estes*, relied heavily on a subrogation case. In *Estes*, the court wrote:

> We applied the [common fund] doctrine in *[Blue Cross & Blue Shield of Ala. v. Freeman,* 447 So. 2d 757, 757 (Ala. Civ. App. 1983)], in a case where an insured proceeded alone to collect a claim against a tort-feasor. Blue Cross, <u>as subrogee under its policy of insurance</u>, sought to intervene near trial time and recover from funds derived from the insured's suit. This court held that mere intervention by Blue Cross, in order to claim from the insured's recovery in his action against the tort-feasor, was not enough to avoid paying its share of attorney fees incurred by the insured. The principle of equity applied in that case appears equally applicable in this case.

*Estes*, 479 So. 2d at 1276-77 (emphasis added). The court is persuaded by the Alabama appellate courts' statements on these issues, and finds that, collectively, they explain why the common-fund theory applies (in a manner that would be helpful to Acker and Hayes if this were a subrogation case, but that is not helpful to them as this is a direct claim case).

any such fee, obtained pursuant to the common fund doctrine, should be given a priority over the other claimants, and in what amounts. For this reason also, the court holds that Acker and Hayes have failed to carry their burden of showing a right to a fee, <u>and</u> priority of that right over the right of Green Tree, under the common fund doctrine.

### 2. *The Attorney's Fee Lien*

#### a. No Lien May Attach to the Proceeds

Acker and Hayes also base their claim on the following statute:

(a) Attorneys-at-law shall have a lien on all papers and money of their clients in their possession for services rendered to them, in reference thereto, and may retain such papers until the claims are satisfied, and may apply such money to the satisfaction of the claims.

(b) Upon actions and judgments for money, they shall have a lien <u>superior to all liens but tax liens</u>, and no person shall be at liberty to satisfy the action or judgment, until the lien or claim of the attorney for his or her fees is fully satisfied; and attorneys-at-law shall have the same right and power over action or judgment to enforce their liens as their clients had or may have for the amount due thereon to them.

Ala. Code § 34-3-61 (emphasis added).

Acker and Hayes insist that *Estes*, in addition to supporting their right to a fee under the common fund doctrine, also provides support for their argument that they have a lien, superior in right to that of the other claimants, because, in that case, the Alabama Court of Appeals stated that it was considering "whether counsel . . . [was]

31

entitled to recover from the proceeds of the judgment . . . under [the lien statute], or under the common fund doctrine." *Estes*, 479 So. 2d at 1276. However, even a cursory reading of the <u>decision</u> in *Estes* reveals that it is based <u>only</u> on the common fund doctrine. That is the only <u>topic</u> discussed by the court after the above cited quote. This court finds that *Estes* carries <u>no</u> weight insofar as the attorney's lien statute is concerned.

The parties have not cited, and this court has not found, any Alabama case which addresses these exact facts. However, the great weight of authority outside Alabama holds that no lien can attach under these circumstances, or if it does, it is not entitled to priority over the claim of a creditor such as Green Tree.

For example, *Sureck v. U. S. Fid. & Guar. Co.*, 353 F. Supp. 807, 808 (W.D. Ark. 1973) concerned, as this case does, certain standard mortgage clauses in an insurance policy. Just as in the instant case, when there was a casualty loss, and a dispute arose with the insurance company, an attorney was hired. Once a settlement was reached between the mortgagor and the insurance company, the mortgagee, although it did not participate at all in the negotiations, contended that it was entitled to the full amount, without paying any portion to the attorneys for a fee. Just as in the instant case, the attorneys insisted that they had a lien on the proceeds, and insisted that they be paid first. In denying the attorneys' claim, the district court wrote:

It is well established law in Arkansas that where a mortgage requires the mortgagor to keep the premises insured for the protection of the mortgagee, and where the policies issued to the mortgagor contain loss payable clauses in favor of the mortgagee and mortgage clauses such as the ones involved in this case, the parties have effected a pre-appropriation of insurance proceeds to payment of the mortgage debt, and such proceeds cannot be used for any other purpose without the consent of both parties.

*Sureck*, 353 F. Supp. at 810. The court concluded:

When all is said and done, the Court concludes that the Firm when it undertook the representation of [the mortgagor] without making any arrangements with the [mortgagee], assumed the risk that its claim for compensation would turn out to be inferior to the claim of the mortgagee as far as insurance proceeds were concerned. To put it another way, while the Firm has unquestionably earned its fee, its claim to the insurance proceeds is subject to the contract rights of the [mortgagee]. True, the efforts of the Firm [benefitted] the [mortgagee] as well as [the mortgagor], but that fact alone is not sufficient to give the Firm's claim priority.

*Id.* at 811; *see also, Howard, Singer & Meehan v. Clayton Fed. Sav. & Loan Ass'n,* 578 S.W.2d 56, 57 (Mo. Ct. App. 1978) ("[A] law firm which undertakes to collect proceeds for a mortgagor under a fire insurance policy, without express authority from the mortgagee, assumes the risk that its claim for compensation will turn out to be inferior to the claim of the mortgagee on those proceeds.").

Similarly, the Georgia Court of Appeals, interpreted a lien statute under similar circumstances, in *Leiden v. Gen. Motors Acceptance Corp.*, 136 Ga. App. 268, 268, 220 S.E.2d 716 (1975). In *Lieden*, Joseph Bright had purchased an automobile, and

executed an installment sales contract to the seller, who then transferred the contract

to General Motors Acceptance Corporation ("GMAC"). At the same time, Bright

purchased casualty insurance from Motors Insurance Corporation ("MIC") which

named GMAC as loss payee and contained a New York Standard mortgagee clause,

like the one in the instant case.  A month later the automobile was totally destroyed

by fire, and Bright and MIC disagreed as to the value of the automobile at the time

of the fire. Bright retained an attorney to represent him on a contingent fee basis of

one-third of all money recovered from MIC under the insurance contract. After some

time, a settlement of $5,350 was obtained, and MIC issued a check jointly to GMAC,

Joseph L. Bright, and the attorney. GMAC would not endorse the check or pay the

attorney fee for the collection of the insurance proceeds. The attorney deposited the

check with the court, began an interpleader action, and claimed that the attorney's lien

under Georgia law, a law which was nearly identical to the Alabama attorney lien

statute,[13] took precedence over any lien of GMAC and requested judgment for his fee.

---

[13] As noted by the court, at the time, Ga. Code § 9-613 read:

1.     Attorneys at law shall have a lien on all papers and money of their clients in their possession, for services rendered to them, and may retain such papers until said claims are satisfied, and may apply such money to the satisfaction of said claims.

2.     Upon suits, judgments, and decrees for money, they shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits,

In deciding that no attorney's fee attached, the Court of Appeals of Georgia wrote:

> There is no dispute as to the validity of GMAC's lien. There is no dispute that Bright was indebted to GMAC for the balance owing on his contract and there is no dispute that Bright was entitled only to his equity in the automobile, i.e., its value over and above the balance owing to GMAC. Clearly Bright was not entitled to the entire amount of the insurance proceeds paid in settlement of the fire loss of the automobile. Thus, under the facts here and construing the statute strictly as we must since it is in derogation of common law, no attorney's lien arises thereunder on behalf of the appellant as to those funds belonging to GMAC.

*Id.* at 717 (emphasis added); *see also, Buckeye Cellulose Corp. v. Sutton Const. Co.*, 907 F.2d 1090, 1094 (11th Cir. 1990) (noting that, under Georgia law as stated in *Leiden*, the lien of an attorney could not attach to property in which his client had no interest).

In *Fuller v. Stonewall Cas. Co. of W. Va.*, 172 W. Va. 193, 304 S.E.2d 347 (1983) Hershel Fuller purchased a truck and executed a security agreement which was subsequently assigned to the First National Bank of Bluefield ("the Bank"). Fuller secured automobile insurance from Stonewall Casualty Company ("Stonewall"). The Bank was made a loss payee under the policy. When the truck was destroyed by fire, Stonewall Casualty refused to settle the claim and Fuller retained attorney Richard

---

judgments, and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them.

*Leiden*, 220 S.E.2d at 717.

Rundle on a twenty-five percent contingency fee basis.  Rundle filed suit against Stonewall, and the litigation terminated with Stonewall Casualty agreeing to pay $6,500 in settlement of the claim. The court, at a distribution hearing, allocated $2,480.01 of the proceeds to the Bank, and $3,832.83 to the dealership who had sold the truck (based on the fact that it had made payments on behalf of Fuller when he ceased his installment payments after the truck was destroyed by the fire). The remaining $187.19 of the proceeds were left for the attorney. The attorney argued that the dealership had no lien, judgment, or legal claim against Fuller for the destroyed truck and, therefore, was not entitled to any of the insurance proceeds. He also contended that his attorney's lien should not be subordinate to the Bank's claim.

In interpreting a "charging lien,"[14] the court wrote:

> An attorney's charging lien attaches only to a judgment or fund of money <u>that the client is entitled to receive</u> and which the attorney procured through his efforts, as evidenced by the following Syllabus Points of *Schmertz v. Hammond*, 51 W.Va. 408, 41 S.E. 184 (1902):

---

[14] The court explained:

"An attorney has a lien, on a judgment obtained by him for his client, for his services in the case, the amount whereof is fixed by special contract, although payment thereof cannot be had under the terms of the contract until the money is actually recovered, and no money can be had under an execution on the judgment."

*Fuller v. Stonewall Cas. Co. of W. Va.*, 172 W. Va. 193, 196, 304 S.E.2d 347, 349 (1983).

"4. An attorney has no lien upon a fund which he is not instrumental in creating, and which never came to his hands.

"5. An attorney's special lien for pay for his services out of a fund in court exists only where his client is entitled to participate in that fund. He cannot claim it out of a fund decreed to go to a party under a right adverse to that of the party represented by the attorney. Such party cannot be compelled to pay for the services of an attorney rendered against him.

"6. Where a fund in court arising from a sale of property is consumed by a prior lien, the attorney representing a junior demand has no lien upon that fund for his services."

This is also the general rule elsewhere. In *Re Shirley Duke Assoc.*, 611 F.2d 15 (2nd Cir.1979); *Lyman v. Campbell*, 182 F.2d 700 (D.C.Cir.1950); *Conroy v. Conroy*, 392 So.2d 934 (Fla.App.1980); *Covington v. Rhodes*, 38 N.C.App. 61, 247 S.E.2d 305 (1978).

In the present case, the Bank was named as loss payee on the insurance policy that covered the truck for the fire loss. A loss payee under a fire insurance policy is ordinarily looked upon to have a separate contractual right with the insurer. *Fire Association of Philadelphia v. Ward*, 130 W.Va. 200, 42 S.E.2d 713 (1947); *Fayetteville Building and Loan Association v. Mutual Fire Insurance Company of West Virginia*, 105 W.Va. 147, 141 S.E. 634 (1928); 5A Appleman, Insurance Law and Practice § 3401 (1970); 43 Am.Jur.2d Insurance § 194 (1969). By reason of this contractual right, a lienholder who is named as loss payee on an insurance policy is entitled to the insurance proceeds to the extent of the amount of his debt which is independent of the claim of other lien or judgment creditors. *E.g., Calvert Fire Insurance Company v. Environs Development Corporation*, 601 F.2d 851 (5th Cir.1979); *City of Newark v. Central & Lafayette Realty Company, Inc.*, 150 N.J.Super. 18, 374 A.2d 504 (1977); *St. Louis County National Bank v. Maryland Casualty Company*, 564 S.W.2d 920 (Mo.App.1978). In *Calvert Fire Insurance*

37

> *Company v. Environs Development Corporation, supra*, at 858, the court expressed the rule as follows: "[A] mortgagee or lienholder has no claim to the benefit of a fire insurance policy unless he has been named loss-payee or the policy has otherwise been assigned to him." This rule has been specifically applied in several cases involving an attorney's lien where the attorney did not represent the loss payee. *E.g., Sureck v. United States Fidelity and Guaranty Company*, 353 F.Supp. 807 (W.D.Ark.1973); *Leiden v. General Motors Acceptance Corporation*, 136 Ga.App. 268, 220 S.E.2d 716 (1975); *Howard, Singer & Meehan v. Clayton Federal Savings and Loan Association*, 578 S.W.2d 56 (Mo.App.1978). See also 5A Appleman, Insurance Law and Practice § 3404 (1970).
>
> Based on this law, we conclude that the circuit court was correct in determining that the Bank was entitled to the insurance proceeds independent of the attorney's lien.

*Fuller*, 304 S.E.2d at 350 (emphasis added); *see also, Breton, LLC v. Lincoln Nat. Life Ins. Co.*, 805 F. Supp. 2d 251, 263 (E.D. Va. 2011) (holding that Deed of Trust, which assigns all insurance and condemnation proceeds to mortgagee, and which was perfected prior to attorney's lien, trumps attorney's lien); *New England Mut. Life Ins. Co. v. Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A.*, 690 So. 2d 1354, 1356-57 (Fla. Dist. Ct. App. 1997) ("the attorney's lien attaches only to the debtor's equity in the property. . . . Because in the present case the Lender was a loss payee on the insurance policy, the Firm was chargeable with notice of the Lender's earlier-in-time claim to the insurance proceeds.").

The court finds the logic of all of these cases persuasive. The underlying theme in *Lieden*, *Buckeye Cellulose*, and *Fuller* was that no lien can attach to funds which

38

never belong to the attorney's client. This is consistent with the Alabama Supreme Court's decision in *Mitchell*, where it indicated, in its disapproving language regarding *Estes*, that attorney's fees are properly assessed against client interests, but not other funds. Further, the *Fuller* court's rationale focused on the fact that "[a] loss payee under a fire insurance policy is ordinarily looked upon to have a separate contractual right with the insurer," which, as noted previously in this opinion, is consistent with the law in Alabama. *See, Smith*, 410 So. 2d at 12 (noting that the standard mortgage clause "constitutes a separate contract between a mortgagee and an insurer"); *Alabama Farm Bureau*, 530 So. 2d at 1374 ("[t]he mortgagee has the first right to the insurance proceeds to the extent of the amount owing it by the insured, not exceeding the total liability of the insurer under the policy; and the insured is entitled to the balance of the amount of such liability." ). The *Fuller* court reasoned, and this court agrees, that, based on such contractual right, a lienholder who is named as loss payee on an insurance policy is entitled to the insurance proceeds to the extent of the amount of his debt which is independent of the claim of other lien or judgment creditors.

Acker and Hayes cite one case in support of their position, the Fifth Circuit opinion of *Richards v. Louisiana Citizens Property Ins. Corp.*, 623 F. 3d 241 (5th Cir.

2010).[15] In that case, Richards retained Schoenberger to pursue her claims for an increased insurance settlement amount for damage to her home as a result of Hurricane Katrina. She entered into a contingency fee contract with Schoenberger whereby he would receive 40% of any recovery by Richards from her insurer above the initial settlement amount. Schoenberger's efforts resulted in an increased recovery in the amount of $34,471.85. The insurance company issued settlement checks payable to Richards, Schoenberger, and American Home because the insurance policy stated that the loss was also payable to American Home, the mortgagee, as an additional mortgagee-loss payee. Schoenberger requested that American Home endorse the check, but American Home would not do so and sought the full insurance proceeds on the grounds that its mortgage balance exceeded that sum. Eventually, all of the settlement funds were deposited into the registry of the court, and Schoenberger intervened and sought an attorney fee against 40% of any additional recovery above the initial settlement amount originally offered, in accordance with his contingency fee agreement with Richards.

In holding that the attorney fee lien trumped the mortgagee's interest, the Fifth

---

[15] They make no attempt to set out the facts of this case or compare them to the instant case. Nor do they discuss the case's rationale. Instead, they merely cite the case and state, confusingly, the following:  "where the Fifth Circuit analyzed the Louisiana attorney fee lien statute, which, like Alabama's, gave the attorney fee lien priority over most other liens, and affirmed the district court's order giving priority of the attorney's lien over a loss-payee's contractual right to insurance proceeds."  (Doc. 48 at 5).

Circuit began by stating that

> A plain reading of the statute necessitates affirming the judgment of the district court [which found that the lien was superior]. The statute explains that an attorney may secure an interest in litigation for which he has been retained and that such interest effectively trumps all other interests relevant here. La.Rev.Stat. Ann. § 37:218(A). The statute fits hand-in-glove with the facts of this case.

*Richards*, 623 F.3d at 245. The court did not set out or further examine the statute in its opinion. The court then went on to hold that Louisiana precedent, and a Fifth Circuit decision interpreting the Louisiana lien statute, supported its decision.

This court does not find *Richards* to be persuasive. In addition to being against the great weight of authority on this issue, the decision in *Richards* was based in part on clear Louisiana precedent.[16] There is no similar clear Alabama precedent to guide the court in this case. Further, the court cannot say the Alabama lien statute at issue in the instant case clearly trumps all other interests.

Based on the authorities discussed above, this court determines that the funds at issue belong only to Green Tree. Accordingly, no attorney's lien asserted by Acker

---

[16] The court notes that "[w]here there is any doubt about the meaning of statutes in derogation of the common law, Alabama courts interpret the statute to make the least, rather than the most, change in the common law." *Price v. Time, Inc.*, 416 F.3d 1327, 1342-43 (11th Cir.) *as modified on denial of reh'g,* 425 F.3d 1292 (11th Cir. 2005). Because the attorney lien statute modifies the common law, an Alabama court would interpret it strictly. Moreover, Alabama has adopted the common law of England, *see* Ala. Code § 1-3-1 (1975), whereas Louisiana common law devolves from the Code Napoleon (*Bouis v. Aetna Cas. & Sur. Co.*, 98 F. Supp. 176, 177 (W.D. La. 1951)).

or Hayes could attach to them.

> **b.    Even If an Attorney's Lien Attached to the Proceeds, It Would Be the Lowest Priority**

Green Tree's mortgage lien trumps the tax lien in this case. As the Supreme

Court has stated:

> Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that " 'the first in time is the first in right.' " *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *cf. Rankin v. Scott*, 12 Wheat. 177, 179, 6 L.Ed. 592 (1827) (Marshall, C.J.). For purposes of applying that doctrine in the present case-in which the competing state lien (that of a judgment creditor) benefits from the provision of [26 U.S.C. ]§ 6323(a) that the federal lien shall "not be valid ... until notice thereof ... has been filed"-we must deem the United States' lien to have commenced no sooner than the filing of notice. As for the Bank's lien: Our cases deem a competing state lien to be in existence for "first in time" purposes only when it has been "perfected" in the sense that "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. New Britain*, 347 U.S., at 84, 74 S.Ct., at 369 emphasis added); *see also id.*, at 86, 74 S.Ct., at 370; *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

*U.S. By & Through I.R.S. v. McDermott*, 507 U.S. 447, 449-50, 113 S. Ct. 1526, 1528, 123 L. Ed. 2d 128 (1993). It is undisputed that the mortgage lien of Green Tree was recorded before the tax lien was perfected. Therefore, Green Tree's lien trumps the tax lien of the United States.  For that reason, the claim of the United States to the funds is due to be, and will be, dismissed.

The attorney's lien, even if it attached to the proceeds, would also be inferior to the tax lien <u>by the express wording of the statute</u>, which provides that attorneys "shall have a lien superior to all liens <u>but tax liens</u>." Ala. Code § 34-3-61(b) (emphasis added).  Thus, any attorney's lien would be inferior to the tax lien, which, it has already been established, is inferior to Green Tree's claim.

In response to this argument, Acker and Hayes cite to 26 U.S.C. § 6323(b)(8) which provides:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . .[w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

26 U.S.C.A. § 6323(b)(8). They contend that this statute subordinates the tax lien to their attorney's lien.

However, the federal statute is clear that the tax lien is only subordinated <u>to the extent that these attorneys hold a lien established by state law</u>. Alabama law is clear that attorney's liens are <u>inferior</u> to tax liens. Because the state statute creating the attorney's lien subordinates it to tax liens, the federal statute does not give the attorney's lien priority. Acker and Hayes do not address this point in their

submissions, and none of the cases cited by Acker or Hayes deal with the Alabama

statute at issue.[17]

## C.   The Waiver Argument Is Without Merit

As noted above, the following facts are admitted for purposes of ruling on the

motion for summary judgment:

> Since as early as July 23, 2012, the original mortgagee, GMAC, and by
> virtue of its assignment of the Knowles mortgage to Green Tree, Green
> Tree, have long known that it was likely that the insurance proceeds
> from Standard Fire would be insufficient to satisfy Knowles'[s] debt on
> the note, that Knowles maintained that the insurance proceeds would not
> cover repair costs, that the mortgagee's collateral was under threat of
> condemnation and that Knowles was represented by counsel. Despite
> this knowledge, neither GMAC nor Green Tree advised Knowles or his
> counsel that it claimed the sole right pursuant to a loss-payee clause to
> any settlement funds if those funds were less than the amount owing on
> the mortgage. Neither mortgagee took the position that only it had
> standing to sue Standard Fire or control any litigation regarding the
> insurance proceeds. On June 30, 2014 and September 30, 2014, counsel
> for Knowles notified counsel for Green Tree that they were attempting
> to settle a bad faith/breach of contract case on and invited it to
> participate in settlement negotiations. Green Tree did not respond to the
> requests or assert any contractual right under the loss payee clause of the

---

[17] *GTE Directories Corp. v. Ad-Vantage Tel. Directory*, 892 F. Supp. 254, 256 (M.D. Fla.
1995) was decided under Florida law which has no statute outlining the requirements for an
attorney's lien, and, therefore, no provision subordinating attorney's liens to tax liens. *See Daniel
Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986) ("No statutes outline the requirements for
valid attorney's liens in Florida."). *Strickland v. Daire*, No. 4:01CV1 53/RV, 2002 WL
31477581 (N.D. Fla. Sept. 30, 2002) was also decided under Florida law. *W.T. Mech., Inc. v.
Heatmasters, Inc.*, No. 11 C 2482, 2011 WL 4345474 (N.D. Ill. Sept. 15, 2011) was actually
decided under Illinois law and there is no indication in the opinion if the law creating the statute
is similar to Alabama's. Similarly, *St. Tammany Parish v. Omni Pinnacle, L.L.C.*, No. CIV.A.
11-1472, 2012 WL 2576411 (E.D. La. July 3, 2012) only briefly, and in a footnote, discusses this
issue as it applies to a Louisiana statute.

mortgage to control the litigation or receive any settlement proceeds to the extent they were less than Knowles' debt.[18]

(Doc. 52 at 2-3). Based on these facts, Acker and Hayes argue that Green Tree waived its rights under the loss-payee clause.

The sole authority they site is the *Estes* case, which does not discuss "waiver" at all. Acker and Hayes note as much when they state that "*Estes* did not expressly state that the loss payee had waived its right to be first in line." (Doc. 52 at 8). They see instead an "implicit" holding, and, in Alabama, "a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1209 (Ala. 2006). Particularly in light of the Alabama Supreme Court's later decision in *Mitchell*, this court will not read such a holding into *Estes*.

Alabama law is clear that, by contract, the mortgagee has a first priority right to 100% of the insurance proceeds in this case. Green Tree was entitled to those proceeds whether a lawsuit was filed or not. Acker and Hayes have provided no authority that Green Tree had to provide any other consideration, go out of its way in any manner, or say any magic words in order to collect what, under its contract, it

---

[18] In response to this argument, Green Tree cites to facts it gleans from several documents in the record. (Doc. 53 at 3-5). As noted previously, the court has relied only on facts set out as required under its Uniform Initial Order. These additional facts have not been considered.

was due.[19]

## V.    CONCLUSION

In light of the foregoing, the court concludes that Green Tree's motion for summary judgment, as to all other claimants, including the United States, is due to be **GRANTED**, and the motion for summary judgment of Knowles, Acker, and Hayes is due to be **DENIED**. An appropriate order will be entered.[20]

**DONE** and **ORDERED** this 15th day of September, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[19] Even if Green Tree had waived its rights, the attorney lien claim would still be behind the tax lien in priority.

[20] In light of this holding, there is no need to consider the argument of Acker and Hayes that their requested fees are reasonable. (*See* doc. 48 at 8-9).

46